### Gallatin Coal & Coke Company v. Henry Jerrells.

PEREMPTORY INSTRUCTION—*when should be given.* A peremptory instruction should be given for the defendant where it appears from the evidence that the plaintiff has no right of action.

Action on the case. Appeal from the Circuit Court of Gallatin county; the Hon. PRINCE A. PEARCE, Judge, presiding. Heard in this court at the February term, 1907. Reversed, with finding of facts. Opinion filed September 13, 1907.

W. F. SCOTT, D. M. KINSALL and ROEDEL & ROEDEL, for appellant.

H. ROBERT FOWLER, W. S. PHILLIPS, M. S. WHITLEY and W. R. McKERNON, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This was an action on the case brought by appellee against appellant to recover damages for injuries sustained by appellee while engaged as a miner in appellant's coal mine at Equality, Illinois.

Appellant owned and operated the mine in question. What is known and referred to in the testimony as the "Price" room was turned off or opened west from an entry running north and south. At the time of the injury this room was sixty feet or more in depth and about twenty feet in width at the opening. A railroad track connected by switch with the entry track extended to the face of the coal where the miners work. This room track was near the middle line between the ribs, and on each side were placed props or posts at varying intervals. The room track lay between the

line of props and was the roadway for entrance of coal cars and employes to and from the working face of the coal in that room. On the left or south side of the room, at the entrance, two or three props were set eighteen or twenty inches from the south side of the room track. From these props to the south side or rib was seven feet. Next north of the "Price" room and on the same side of the main entry about fifty-five feet distant was "Jerrells" room, where plaintiff was digging coal. On the day of his injury a keg of powder was delivered to the plaintiff at the mouth of his room. About eleven o'clock he took the powder and went down the main entry to the Price room and deposited the powder in the forks of the frog at the switch leading into the Price room. According to plaintiff's testimony he then went into the roadway of the Price room, sat down between two props on the south side and began the preparation of a cartridge or blast, and that while so engaged a clod or stone fell upon him, causing the injury complained of.

Upon the issues made by a plea of not guilty, a trial by jury resulted in a verdict of guilty as to the second and fifth counts of an amended declaration, with damages assessed at $750. A motion by the defendant for a new trial was overruled and judgment rendered on the verdict, from which the defendant appealed. A peremptory instruction to take the case from the jury was asked and refused at the close of plaintiff's evidence and again at the close of all the evidence. The action of the court in refusing the peremptory instruction is assigned as error for which it is contended by appellant that the judgment should be reversed. The inquiry under this contention is, whether or not there was any evidence tending to prove all the material allegations of either count of the declaration upon which the case was tried. In substance, the second count alleges that the defendant failed in its duty to inspect the said mine and to exercise reasonable care to furnish plaintiff with a reasonably safe place to work,

though it is erroneously averred that it was the duty of the defendant "to keep all rooms and roadways and working places *in a safe condition* and to furnish the plaintiff *a secure and safe* place in which to perform his duty." The theory and contention of appellee as it appears from his evidence on the trial and in argument of his counsel in this court is, that he was injured while on the roadway in the entrance to the Price room by a fall of rock from the roof of the roadway. The allegation in the second count as to how the injury occurred is, that while he (the plaintiff) was "on his passage in a roadway in said mine, which travel was necessary to prepare for a shot in his working place in said mine, was then and there violently, and with great force thrown down by means of a huge mass of coal etc. comprising the roof of said mine, then and there falling upon him," etc.

To maintain the cause of action as set out in this count it was material and necessary to prove that the roof of the roadway was in a dangerous condition, that appellee did not know it, that appellant did know it or by the exercise of reasonable care should have known it, and that the injury complained of was caused by a fall of rock or coal from the roof of the roadway. From this record it must be held that there is no evidence that the roof of the roadway was in a dangerous condition or that the injury complained of was caused by a fall of rock or coal from the roof of the roadway. There was no eye witness to the occurrence. No one saw the rock fall upon appellee, but from the evidence of all the witnesses who first came to his assistance and described his position and that of the rock under which he lay, there can be but one reasonable inference as to where the rock, which fell upon appellee, came from, and that is that the rock fell from the roof of the room outside the roadway, and within the space between the posts and the rib on the south side. The witnesses are in substantial accord that the rock or clod in question was about six feet long, three or four

feet wide, six or seven inches thick on one side, thinning out to a feather edge on the other, and that it lay against the posts outside the roadway, between the posts and the rib. The evidence is not disputed that on examination a break was found in the roof of the Price room corresponding in size and shape to the fallen rock, clearly indicating the place from which the rock had fallen, and that the outer edge of the break nearest the props was three or four feet from the props. It further appears from the undisputed evidence that that part of the Price room between the props and the rib was no longer a working place, and was partly filled with gob or refuse which accumulated as the coal was taken from that room. The gob was piled against the rib and sloped toward the posts or track. Not being a working place for the miners, it was not within the mine owner's statutory duty to inspect it with reference to the condition of the roof, and without any evidence that reasonable care for the safety of those upon the roadway required an inspection of this part of the Price room, negligence may not be attributed to appellant for failure to make such inspection. The appellee's testimony on direct examination as to the occurrence and his position at the time is as follows: ''I took my machine and tools and paper and keg of powder and went up to Price's room so I could leave my powder there. * * * When I got there dropped the keg down in the forks of the frog of Price's room on the main entry. The frog sets in the switch—the switch off the main track in the Price room. Walked in the middle of his road and stayed until he got out of the way. I set down where he got up from a little chunk of coal, put my heels out against the rail. * * * Rolled one cartridge on the point, pulled it off and started to lay another, when the slate fell on my back and head.'' On cross-examination: ''I was hurt right in the neck of the room, setting between two props, or on far side of first prop, don't remember which; it was on the left-hand side as you

go in. I was not back on the gob between the props
and rib; there was but little gob there.'' This is all
of appellee's testimony abstracted respecting his posi-
tion at the time the rock fell upon him. That his posi-
tion ''between the props,'' as he puts it, was beyond
the line of posts toward the rib far enough to expose
his body to the falling rock outside the roadway, so
fully and clearly appears from the testimony of all the
witnesses, both for appellee and appellant, that all rea-
sonable minds would surely agree. The jury should
·have been instructed that there was no evidence of
liability under the second count.

As regards the fifth count, appellee makes no con-
tention in statement of facts, brief or argument, that
the custom therein alleged was to have other effect
than to justify appellee's presence in the roadway at
the time of his alleged injury, and to hold appellant to
the duty of inspection and warning marks respecting a
dangerous condition of the roadway. In expressing
views as to liability under the second count we do not
deem it necessary to discuss the questions of ordinary
care and assumed risk by appellee, for holding, as we
do, that the injury complained of was caused by a fall
of rock outside the roadway, and that there was no
evidence in proof of the allegation that the rock fell
upon appellee from the roof of the roadway, it was not
material to a decision of the case whether or not the
appellee was rightfully and properly in the roadway
at the time, and we express no opinion upon that ques-
tion. The failure of appellee to notice in brief and
argument the contentions of appellant respecting the
fifth count may be treated as a waiver of any claim
under that count. Nevertheless, it may be observed
that there was no evidence of a custom by which appel-
lant was held to liability for unsafe conditions of
abandoned and unused parts of the mine, which from
the undisputed evidence in this record appears to have
been the condition and character of that part of the
Price room outside the roadway at the place where ap-

pellee was injured. For the error of the trial court in refusing the peremptory instruction, the judgment will be reversed and as it appears from the evidence that appellee has no right of action, the cause will not be remanded.

*Reversed with finding of facts.*

We find as facts, to be incorporated with the judgment, that appellant was not guilty of the negligence alleged in the declaration and that the injury complained of was not caused by the negligence alleged.